1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

NICOLE S. HAYES,

NO.  C13-2293-MJP-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

Defendant.

13

14

Plaintiff Nicole S. Hayes appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") which denied her applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be REVERSED and REMANDED.

20

I.        FACTS AND PROCEDURAL HISTORY

21

At the time of the administrative hearing, plaintiff was a twenty-seven year old woman

22

with a ninth grade education.  Administrative Record ("AR") at 48.[1]  Her past work experience

23

24

---

[1] Plaintiff reported that she dropped out of high school in the tenth grade, and has never obtained her GED.  AR at 362.

REPORT AND RECOMMENDATION - 1

1   includes employment as a cashier at the Dollar Store and a fast food worker at McDonald's and

2   Burger King.  AR at 73-74.  Plaintiff was last gainfully employed in 2005, although her work

3   activity after November 2000 did not rise to the level of substantial gainful activity.  AR at 22,

4   205-06, 209.

5          Plaintiff protectively filed applications for SSI payments, DIB, and Children's

6   Disability benefits on September 1, 2010.[2]  In all her applications, plaintiff alleged disability

7   beginning on November 20, 2000.  Plaintiff asserts that she is disabled due to panic attacks,

8   personality disorder, obesity, asthma, headaches, acid reflux, carpal tunnel syndrome,

9   hypertension and leg swelling.  AR at 22.

10         The Commissioner denied plaintiff's claims initially on January 7, 2011, and on

11   reconsideration on June 14, 2011.  AR at 88-97, 103-21.  Plaintiff requested a hearing, which

12   took place on March 8, 2012.  AR at 38-81.  On May 16, 2012, the ALJ issued a decision

13   finding plaintiff not disabled and denied benefits based on his finding that plaintiff could

14   perform a specific job existing in significant numbers in the national economy.  AR at 16-32.

15   The Appeals Council denied review on October 14, 2013, AR at 1-6, making the ALJ's ruling

16   the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On

17   December 23, 2013, plaintiff timely filed the present action challenging the Commissioner's

18   decision.  Dkt. 1.

19                        II.     JURISDICTION

20         Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

21   405(g) and 1383(c)(3).

22   ───────────────

23         [2] To establish eligibility for DIB, plaintiff must establish disability prior to her date last
     insured, September 30, 2003.  AR at 21.  To establish eligibility for adult child's benefits, she
24   must establish disability on or before her twenty-second birthday in 2006.  AR at 21.  Finally,
     she is eligible for SSI if she has been disabled since her September 1, 2010 filing date.

REPORT AND RECOMMENDATION - 2

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

REPORT AND RECOMMENDATION - 3

1

## IV.   EVALUATING DISABILITY

2

As the claimant, Ms. Hayes bears the burden of proving that she is disabled within the

3

meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

4

Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

5

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

6

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

7

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

8

are of such severity that she is unable to do her previous work, and cannot, considering her age,

9

education, and work experience, engage in any other substantial gainful activity existing in the

10

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

11

99 (9th Cir. 1999).

12

The Commissioner has established a five step sequential evaluation process for

13

determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

14

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

15

step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

16

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

17

one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R.

18

§§ 404.1520(b), 416.920(b).[3]  If she is, disability benefits are denied.  If she is not, the

19

Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

20

or more medically severe impairments, or combination of impairments, that limit her physical

21

or mental ability to do basic work activities.  If the claimant does not have such impairments,

22

_____

23

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

24

REPORT AND RECOMMENDATION - 4

she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On May 16, 2012, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2003.  Under the application for child's insurance benefits, the claimant met the insured status requirements through June 21, 2006.

2.    The claimant has not engaged in substantial gainful activity since November 20, 2000, the alleged onset date.

3.    The claimant has the following severe impairments: panic disorder and personality disorder

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can perform simple, routine tasks and follow short, simple instructions. The claimant can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. The claimant would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. The claimant can have occasional interactions of a superficial nature with co-workers and supervisors and can work in proximity to co-workers but not in a cooperative or team effort. The claimant can deal with occasional work setting changes. The claimant cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1984 and was 16 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[4]

8.    The claimant has a limited education and is able to communicate in English.

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2000, through the date of this decision.

12.    The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to June 21, 2006, the date she attained age 22.

AR at 21-32.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ give clear and convincing reasons for finding plaintiff less than fully credible?

2.    Did the ALJ err in evaluating the opinion of Kathleen Anderson, M.D.?

3.    Did the ALJ properly consider the lay testimony of plaintiff's mother, Karen Klokstad?

4.    Does the ALJ account for plaintiff's panic attacks in the RFC assessment?

Dkt. 13 at 1-2; Dkt. 14 at 1.

## VII.    DISCUSSION

A.    The ALJ Erred in Evaluating Plaintiff's Credibility

1.    *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the

1    claimant's testimony as to the severity of symptoms solely because they are unsupported by

2    objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

3    *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

4    that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

5    rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

6        When evaluating a claimant's credibility, the ALJ must specifically identify what

7    testimony is not credible and what evidence undermines the claimant's complaints; general

8    findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

9    consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

10   inconsistencies in testimony or between testimony and conduct, daily activities, work record,

11   and testimony from physicians and third parties concerning the nature, severity, and effect of

12   the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

13   *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

                    2.    *The ALJ's Reasons for Finding Plaintiff Less Than Credible are*
14                         *Not Clear and Convincing*

15       The ALJ found that although plaintiff's medically determinable impairments could

16   reasonably be expected to cause some of the alleged symptoms, her statements concerning the

17   intensity, persistence, and limiting effects of these symptoms are not credible to the extent they

18   are inconsistent with the ALJ's RFC assessment.  AR at 25.  Specifically, the ALJ found that

19   (1) plaintiff's subjective complaints were not reasonably consistent with the objective medical

20   evidence, (2) plaintiff has failed to comply with recommended medical treatment,

21   (3) plaintiff's symptoms have improved despite her non-compliance with treatment

22   recommendations, (4) plaintiff has worked despite her impairments and quit work for other

23

24

reasons, (5) plaintiff can perform a full range of daily activities, and (6) plaintiff has made inconsistent statements that "erode the claimant's overall credibility."  AR at 25-27.

(a)      *Inconsistency with Objective Medical Evidence*

The ALJ found that plaintiff's "subjective complaints are not reasonably consistent with the medical evidence.  Mental status examinations showed the claimant was calm, interactive, pleasant, cooperative, and she maintained good eye contact.  She was dressed appropriately with a full-range affect.  Her thought process was logical and connected, her thought content was appropriate and her speech was normal." AR at 25.  In addition, "memory testing showed intact immediate, recent and remote memory.  Insight and judgment were within normal limits.  No cognitive impairment was found."  AR at 25 (citing AR at 321, 333, 335, 358, 447).

The Ninth Circuit has asserted that although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects."  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").  In other words, an ALJ may consider the inconsistency between plaintiff's allegations and the objective medical evidence in the record, among other factors, in determining plaintiff's credibility.

1   Although an ALJ may properly consider the inconsistency between plaintiff's testimony

2   and the objective medical evidence in assessing plaintiff's credibility, in this case the only

3   "objective medical evidence" cited by the ALJ are several mental status examinations.  These

4   examinations simply do not account very well for plaintiff's primary complaint of panic

5   attacks, as she was not actually experiencing panic attacks during the examinations.  Dkt. 13 at

6   20.  Furthermore, the ALJ's summary of plaintiff's mental status examinations

7   mischaracterizes one examination from February 2008, where plaintiff's thought processes

8   were described as "tangential" in addition to being "logical and connected," because

9   "occasionally she went off on tangents and had to be refocused on the question."  AR at 333.

10  In addition, plaintiff was described as "withholding" information when asked directly, and her

11  mood was described as "anxious about getting medication for panic attacks."  AR at 332.

12  Finally, her insight and judgment were described as "poor."  AR at 334.

13  Thus, the Court is not persuaded that plaintiff's mental status examinations were a clear

14  and convincing reason for the ALJ to discount plaintiff's credibility.  As discussed below, the

15  other reasons cited by the ALJ for finding plaintiff less than credible also did not meet the clear

16  and convincing standard.

17  (b)   *Failure to Comply with Treatment Recommendations*

18  The ALJ also noted "some compliance issues" that undermine plaintiff's credibility.

19  For example, the ALJ cited treatment notes from December 2002 indicating that plaintiff

20  "failed to get in touch with a new psychiatrist, as she did not like her previous psychiatrist."

21  AR at 26 (citing AR at 296).  In January 2002, plaintiff stopped medications without medical

22  advice.  AR at 26 (citing AR at 302).  The ALJ noted that plaintiff "only sporadically attended

23  scheduled therapy and medication management appointments and usually attended only when

24  required to continue to receive her benzodiazepine prescriptions.  When the mental health

provider stated that benzodiazepines would no longer be prescribed, the claimant stated she

would 'go get help somewhere else.'" AR at 26.  The ALJ pointed out that in fact, "the record

states that the claimant did not make progress toward her goal of decreasing anxiety symptoms

largely due to her non-participation in treatment."  AR at 26 (citing AR at 317-19) (providing

that plaintiff's current status upon discharge from therapy at Sound Mental Health in

September 2009 as follows: "[Plaintiff] did not make progress toward her stated goals of

decreasing her anxiety and increasing her skills for coping with anxiety largely due to non-

participation in treatment.").  In 2008, it was noted that plaintiff was participating in therapy

only due to a DSHS request.  AR at 26 (citing AR at 322).  In 2009, plaintiff either missed or

rescheduled appointments for a nine-month period of time, and declined to see a provider who

refused to increase her benzodiazepine medication.  AR at 26 (citing AR at 320).  In April

2010, plaintiff's provider declined to prescribe Klonopin due to alcohol use.  AR at 352.

Finally, "[a]t one point, the claimant's provider refused to continue to give the claimant

medication and a treatment note states, 'We must stop giving this young woman narcotics!!!'"

AR at 26 (citing AR at 403, 406).[5]

Plaintiff argues that the ALJ erred by rejecting plaintiff's testimony based upon her

failure to comply with recommendations for medication and therapy without considering

plaintiff's explanation for her behavior. Dkt. 13 at 21.  Plaintiff asserts that her anxiety and

personality disorder make it hard for her to leave the house in order to participate in therapy,

and the ALJ should have considered this possible explanation before drawing a negative

inference from plaintiff's failure to seek treatment.  *Id*. at 21-22.

---

[5] The same treatment note also states that plaintiff "<u>must</u> see psychologist right now
(ASAP)."  AR at 406.

REPORT AND RECOMMENDATION - 11

1      Plaintiff's argument is well-taken.  The failure by a claimant to assert a good reason for

2  not following a prescribed course of treatment or a finding that a proffered reason is not

3  believable "can cast doubt on the sincerity of the claimant's pain testimony."  *Fair v. Bowen*,

4  885 F.2d 597, 603 (9th Cir. 1989).  *See also Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th

5  Cir. 2012) (citing *Tommasetti*, 533 F.3d at 1039) (The Ninth Circuit has "long held that, in

6  assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately

7  explained failure to seek treatment or to follow a prescribed course of treatment.'"); SSR 96-7p

8  (according to agency rules, an individual's statements may be less credible if the level of

9  frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

10  records show that the individual is not following the treatment as prescribed and there are no

11  good reasons for this failure).  However, the ALJ "must not draw any inferences" about a

12  claimant's symptoms and their functional effects from such a failure, "without first considering

13  any explanations" that the claimant "may provide, or other information in the case record, that

14  may explain" that failure.  SSR 96-7p.

15      It is undisputed that plaintiff believes benzodiazepine prescriptions are the only way to

16  effectively manage her symptoms, and in the past when providers have indicated they would

17  not prescribe that medication because of plaintiff's history of alcohol abuse, plaintiff sought

18  the medication elsewhere.  For example, after nine months of missing or rescheduling therapy

19  appointments, in February 2009 plaintiff refused to see her prescriber anymore because she had

20  declined to increase her benzodiazepines.  AR at 320.  Plaintiff concedes that "at first, she

21  really only participated in treatment when necessary to get the medication she wanted."  Dkt.

22  13 at 21.  *See* AR at 26, 317-20.  However, plaintiff argues that she has more recently begun to

23  acknowledge that therapy helps her symptoms.  Dkt. 13 at 21 (citing AR at 472) ("I really need

24

1   to see you more.").  In addition, plaintiff asserts that her anxiety and personality disorders were

2   the main reasons she failed to comply with treatment recommendations in the past.

3          The ALJ drew negative inferences about plaintiff's credibility based upon what the ALJ

4   appears to have considered drug-seeking behavior on plaintiff's part, as well as plaintiff's

5   failure to attend her recommended therapy appointments.  AR at 26.  However, the ALJ erred

6   by drawing such inferences without also considering plaintiff's report that her anxiety and

7   panic attacks make it hard for her to leave her house, especially on her own.  Plaintiff testified

8   that she "cannot go anywhere by myself.  I'm scared to take Metro buses.  I can drive

9   somewhat but it's only on back roads.  I can't do bridges, freeways, busy streets . . . I'm

10  talking maybe 15 blocks at the max maybe."  AR at 50.  Plaintiff testified that she cannot even

11  go to the doctor's office by herself, because "I get too panicky."  AR at 50.  When the ALJ

12  asked plaintiff about missing therapy appointments at Sound Mental Health in the past,

13  plaintiff testified, "I'm sure I missed some, but when I have panic attacks I can't leave my

14  house and go.  I just, I can't go."  AR at 52.  If plaintiff's testimony is credited, it would

15  logically be very difficult for her to participate in regular therapy appointments.[6]  *See Nguyen*

16  *v. Chater*, 100 F.3d 1463, 1465 (9th Cir. 1996) ("It is a questionable practice to chastise one

17  with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

18  Because the ALJ has not adequately considered plaintiff's explanation for her failure to

19  comply with treatment recommendations, i.e., that her anxiety makes it very difficult for her to

20  leave the house, plaintiff's non-compliance with treatment was not a clear and convincing

21  reason for the ALJ to discount plaintiff's credibility.

22  _____

23         [6] Plaintiff also argues, in the alternative, that plaintiff's personality disorder could be
    expected to create difficulties comply with treatment recommendations.  However, the Court
24  notes that plaintiff's arguments regarding the possible symptoms of her personality disorder are
    not as well supported by the record.

REPORT AND RECOMMENDATION - 13

1

            (c)      *Improvement of Plaintiff's Symptoms*

2          The ALJ noted that despite plaintiff's noncompliance with treatment recommendations,

3    "some improvement exists." AR at 26.  The ALJ cited to some records from 2001 and 2002,

4    where plaintiff expressed that "socially" things were going "very well" and her panic attacks

5    were "well controlled" even off medications.  AR at 298, 300, 302. The ALJ also cited

6    plaintiff's report in April 2010 that she is "happy with my life" living with her son and family,

7    and that she considered her house a "safe zone." AR at 351.  The ALJ further noted that "[a]s

8    of 2011, the claimant stated that medication improved her 'racing heart' associated with panic

9    attacks . . . In July 2011, she considered her anxiety symptoms 'stable.'" AR at 26 (citing AR

10   at 394, 460).

11         This was not a clear and convincing reason for the ALJ to discount plaintiff's

12   credibility.  The record does not reflect steady improvement of plaintiff's panic attack and

13   anxiety symptoms following 2001 and 2002, which is only a year or two after plaintiff's

14   November 20, 2000 alleged onset date.  With respect to the treatment note from April 2010,

15   the ALJ appears to have focused on plaintiff's explanation for why she does not believe she

16   suffers from depression, while ignoring plaintiff's description of her ongoing struggle with

17   anxiety and panic attacks:

18            Panic attacks "feel like I'm going to die, feel shaky, heart races" lasts 30
             min. to all day.  Multiple ER visits for panic attacks.  Anxiety between
19           attacks, ["]heart palpitations." [D]epression, "a little mostly anxiety. I'm
             happy with my life, living [situation], son, family.  My house is my safe
20           zone.  Don't like to go out much." Denies suicide attempt…

21   AR at 351.  Similarly, although the ALJ focused on plaintiff's statement that medication

22   improved her racing heart associated with panic attacks in January 2011, the rest of the

23   treatment note indicated that anxiety has "been a long-standing problem," she is continuing to

24   have panic attacks, "no longer drives due to her anxiety," and "remains homeless, living with

REPORT AND RECOMMENDATION - 14

1   her little boy at a longtime friend's house." AR at 394.  She also expressed "concern[] about

2   her rapid and at times irregular heartbeat," requesting a referral to Harborview cardiology.  AR

3   at 394.  Thus, the Court finds that improvement in plaintiff's symptoms was not a clear and

4   convincing reason for the ALJ to discount plaintiff's credibility.

5                   (d)      *Work Activity*

6           The ALJ also noted that plaintiff "has worked with the allegedly disabling impairments

7   and . . . quit work due to reasons beyond her impairments."  AR at 26.  Specifically, plaintiff

8   "reported working fast food restaurant jobs but she left to go get a 'better paying job' as a

9   busser.  She quit this job because she did not get off work until 1:30 a.m.  She tried

10   telemarketing work but she 'didn't like it.'  She reportedly had an accident at a subsequent job,

11   resulting in quitting and later work at the Dollar Store ended when the owner sold the store."

12   AR at 26.  At another job, she was let go because of pregnancy.  AR at 26.  The claimant

13   explicitly stated that she was never fired from a job.  AR at 26 (citing AR at 362).  The ALJ

14   asserted that a "condition that has existed for a long period of time, that did not prevent work

15   in the past, should not prevent work at the present or future without objective evidence of

16   drastic worsening of the impairment.  Indeed, working with an impairment supports a

17   conclusion it is not disabling."  AR at 26.

18           Plaintiff points out that she "has never been able to work at substantial gainful activity

19   levels."  Dkt. 13 at 23 (citing AR at 202-03, 214).  Indeed, at step one the ALJ found that

20   although "the claimant worked after the alleged disability onset date . . . this work activity did

21   not rise to the level of substantial gainful activity."  AR at 22.  Thus, the Court is not persuaded

22   that plaintiff's past work attempts undermine her credibility, even if she was not let go due to

23   her mental impairments.  In any event, plaintiff has also reported that her panic attacks caused

24   problems at her two most recent jobs.  AR at 209.  Specifically, plaintiff reported that she

REPORT AND RECOMMENDATION - 15

1   stopped working at the Dollar Store in 2005 because "the store was sold and I was having bad

2   panic attacks." AR at 209. Similarly, she reported she stopped working as a "spice girl" for

3   the Heinz company in 2003 because "I was having a bad panic attack and fell, then I left work

4   to move back home with my mother." AR at 209. Thus, plaintiff's work activity was not a

5   clear and convincing reason for the ALJ to find plaintiff less than credible.

6                  (e)     *Daily activities*

7          The ALJ also found that plaintiff "can perform a full range of daily activities, which is

8   inconsistent with the nature, severity and subjective complaints of the claimant." AR at 27.

9   The ALJ found that plaintiff "reported spending time with her son, 'watching movies and

10  eating popcorn.' In 2008, she visited the casino. She was able to ride public transportation . . .

11  Likewise, in her adult function report, the claimant described getting her son ready for school,

12  completing light household chores, such as laundry, running errands, getting her son from

13  school, helping him with homework, preparing meals and watching the television." AR at 27.

14  The ALJ noted that plaintiff helped care for two family cats and her mother, including

15  "reminding her about medications/medical appointments and helping her dress." AR at 27.

16  Finally, "despite complaints of disabling anxiety symptoms, she was able to shop in stores for

17  food and household items . . . These activities do not reflect the disabling limitations alleged by

18  the claimant." AR at 27.

19         In determining whether a claimant's symptom testimony is credible, the ALJ may

20  consider that claimant's daily activities. *Smolen,* 80 F.3d at 1284. The Ninth Circuit has

21  recognized "two grounds for using daily activities to form the basis of an adverse credibility

22  determination." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). First, a claimant's daily

23  activities can "meet the threshold for transferable work skills." *Smolen,* 80 F.3d at 1284. Such

24  testimony may be rejected, though, only if the claimant "is able to spend a substantial part of

1    his or her day performing household chores or other activities that are transferable to a work

2    setting." *Id.* at 1284 n. 7.  However, the claimant need not be "utterly incapacitated" to be

3    eligible for disability benefits, and "many home activities may not be easily transferable to a

4    work environment." *Id.*  Second, a claimant's daily activities can "contradict his [or her] other

5    testimony." *Orn,* 495 F.3d at 639.

6          Neither of these grounds are applicable here.  The record fails to show that the activities

7    plaintiff engaged in at home are the type that are transferable to a work setting.  In addition,

8    plaintiff's daily activities described in the record do not contradict her own testimony.  Plaintiff

9    has reported that she can leave her house at times to run errands, grocery shop, and attend

10   medical appointments.  However, she testified that she is rarely able to do any of these things

11   independently, and instead obtains assistance from another person, such as her mother.  The

12   ALJ's discussion of plaintiff's daily activities ignores this important fact.  AR at 27.[7]

13   Accordingly, plaintiff's ability to perform a range of daily activities with the aid of another

14   adult is not a clear and convincing reason for the ALJ to reject her testimony.

15                    (f)    *Plaintiff's inconsistent statements*

16         Finally, the ALJ identified two "inconsistencies" in the record that "erode the

17   claimant's overall credibility." AR at 27.  The ALJ pointed out that plaintiff stated in January

18   2011 that she no longer drove due to anxiety, but Dr. Burdick's evaluation stated that plaintiff

19   drove herself to the clinic.  AR at 27.  *Compare* AR at 394 ("She no longer drives due to her

20   anxiety.") *with* AR at 415 ("The Claimant . . . drove herself to the clinic.").  In addition,

21   despite plaintiff's testimony that she has few friendships, the ALJ points out that plaintiff

22          ───────────────
23          [7] Consistent with this evidence, plaintiff testified during the hearing that she "clean[s] if
     I need to clean.  If we need to go the store we have somebody take us to the grocery store.  I
     get my son ready for school.  I help him with his homework when he comes home from school.
24   I make dinner.  I take a shower and that's pretty much it . . . that's pretty much what I do is just
     stay home and raise my son." AR at 50.

REPORT AND RECOMMENDATION - 17

1    reported living with her son at a longtime friend's house. AR at 27 (citing AR at 394) ("She

2    remains homeless, living with her little boy at a longtime friend's house.").

3          As discussed above, in assessing the claimant's credibility, the ALJ may use ordinary

4    techniques of credibility evaluation, such as considering any inconsistent statements in her

5    testimony. *See Tonapeytan*, 242 F.3d at 1148. During the hearing, plaintiff testified at length

6    about how her anxiety limits her ability to drive herself places. As noted above, the ALJ has

7    identified one January 2011 consultative examination where plaintiff apparently drove herself

8    to the clinic. AR at 27, 394, 415. However, the ALJ did not ask plaintiff if she could explain

9    this inconsistency during the hearing.

10         With respect to the second proposed inconsistency cited by the ALJ, the record reflects

11   that plaintiff has reported having a few friends on several occasions. For example, Dr.

12   Anderson noted that plaintiff arrived on time for her appointment, "having been driven to my

13   office by a friend who waited for her in the waiting room." AR at 364. As the ALJ noted

14   elsewhere in his decision, plaintiff initially told Dr. Anderson "that she doesn't have any

15   friends besides the people she is staying with, but later says that she gets friends to drive her to

16   appointments if she has them or to the store. At this point she says that she has three different

17   people drive her places and another friend whom she hasn't talked to much since she moved."

18   AR at 28, 363. Dr. Anderson noted that plaintiff "apparently has support through a number of

19   friends/acquaintances who are willing to drive her places and also feels supported by her

20   mother whom she describes as her 'best friend.'" AR at 365.

21         Accordingly, the Court is not persuaded that these inconsistencies, without more, are a

22   clear and convincing reason to find plaintiff less than credible. Regardless, because the ALJ's

23   other cited reasons for finding plaintiff less than fully credible are not clear and convincing, the

24   ALJ's overall credibility determination is not supported by substantial evidence. *See*

REPORT AND RECOMMENDATION - 18

1  *Tonapetyan*, 242 F.3d at 1148.  This case must be reversed and remanded for further

2  administrative proceedings.

3          On remand, the ALJ shall re-evaluate plaintiff's credibility.  In particular, the ALJ

4  should clarify whether plaintiff's failure to regularly attend therapy appointments and her

5  tendency to seek out benzodiazepines can properly be considered non-compliance with

6  treatment recommendations and/or drug-seeking behavior, or alternatively, symptoms of her

7  plaintiff's diagnosed mental impairments.

8          B.      The ALJ Erred in Evaluating the Medical Evidence

9                  1.      *Standards for Reviewing Medical Evidence*

10         As a matter of law, more weight is given to a treating physician's opinion than to that

11 of a non-treating physician because a treating physician "is employed to cure and has a greater

12 opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

13 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

14 physician's opinion, however, is not necessarily conclusive as to either a physical condition or

15 the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

16 *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

17 physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

18 contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

19 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

20 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

21 making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

22 merely state his/her conclusions.  "He must set forth his own interpretations and explain why

23 they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

24

1    (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

2    *Reddick*, 157 F.3d at 725.

3            The opinions of examining physicians are to be given more weight than non-examining

4    physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

5    uncontradicted opinions of examining physicians may not be rejected without clear and

6    convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

7    physician only by providing specific and legitimate reasons that are supported by the record.

8    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

9            Opinions from non-examining medical sources are to be given less weight than treating

10   or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

11   opinions from such sources and may not simply ignore them.  In other words, an ALJ must

12   evaluate the opinion of a non-examining source and explain the weight given to it.  Social

13   Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

14   more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

15   non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

16   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

17   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

18            2.       *Kathleen Anderson, M.D.*

19            Kathleen Anderson, M.D., performed a consultative examination of plaintiff on

20   December 15, 2010.  AR at 360-66.  Dr. Anderson summarized plaintiff's medical records

21   from February 2009 through October 2011, noting in particular that the treatment notes reflect

22   "a history of a fair amount of drug-seeking behavior of benzodiazepines" by plaintiff at various

23   clinics.  AR at 364.  Dr. Anderson diagnosed plaintiff with panic disorder with partial

24   agoraphobia and a personality disorder NOS with avoidant and borderline features with a GAF

REPORT AND RECOMMENDATION - 20

of 52.  AR at 365-66.[8]  Dr. Anderson noted that plaintiff "gives a longstanding history of panic

attacks with partial agoraphobia.  She reports having attacks every day with palpitations,

derealization, sweatiness, shakiness, and shortness of breath.  These can occur at home or in

public.  She avoids going out as much as possible and tries to avoid going out by herself."  AR

at 366.  Dr. Anderson also observed that although plaintiff "has apparently participated in

therapy, it seems fairly clear from records and from what she says that she considers to be (sic)

benzodiazepines the treatment of choice for her panic attacks.  She has dismissed treatment

with other kinds of medications."  AR at 366.  Dr. Anderson commented that "[m]y sense is

that she is not truly motivated to get beyond the attacks and to become more independent and

increase her sphere of activities.  Given this, the changes of her successfully finding and

maintaining employment are small."  AR at 366.  Dr. Anderson noted that "there are other

medications she has not tried which potentially could be helpful to her," along with "a rigorous

course of cognitive-behavioral therapy."  AR at 366.  Because plaintiff "does not seem to be

particularly motivated to pursue these treatment options," however, Dr. Anderson considered

plaintiff's prognosis to be guarded.  AR at 366.

With respect to plaintiff's functional limitations, Dr. Anderson opined that plaintiff

"would likely have extreme difficulty sustaining concentration and task persistence in a work

setting related to high levels of anxiety/panic in a public situation.  She would likely have

significant difficulty interacting with coworkers, supervisors, and the public, again, because of

high levels of anxiety and her focusing on physiological symptoms of anxiety-palpitations,

---

[8] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
A GAF score falls within a particular 10-point range if either the symptom severity or the level
of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
"moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
in social or occupational functioning."  *Id.* at 34.

1  shortness of breath, etc." AR at 366. Plaintiff would have very little resiliency in dealing with

2  the stresses and demands of employment. As she describes things, it would be highly unlikely

3  that she would even make it to a job on a regular basis." AR at 366.

4         The ALJ summarized Dr. Anderson's opinion, AR at 28-29, but only assigned "some

5  weight" to Dr. Anderson's assessed limitations for the following reasons:

6            The mental status examination was unremarkable, suggesting few
             cognitive barriers to work. She was able to relate well to Dr. Anderson
7            and persist during the evaluation. This suggests that the claimant would
             be capable of sustaining work and given great weight. However, Dr.
8            Anderson's opinion that the claimant could not handle the stress of work
             and that she would be unable to sustain a normal workday is inconsistent
9            with her statement that the claimant did not seem motivated to pursue
             treatment that would help her become more independent as well as her
10           daily activities, which included caring for her young son.

11  AR at 29.

12         Plaintiff asserts that the ALJ erred by rejecting Dr. Anderson's opinion as "inconsistent

13  with her statement that the claimant did not seem motivated to pursue treatment," as this

14  essentially reduces plaintiff's "problems to a lack of self-motivation or drive rather than her

15  acknowledged mental illness . . . Dr. Anderson did not suggest that the Plaintiff's lack of

16  motivation was volitional rather than caused by Plaintiff's mental illness." Dkt. 13 at 10-11

17  (citing AR at 366). Plaintiff points out that she has a diagnosed anxiety disorder and

18  personality disorder, and "[p]laintiff's lack of 'motivation' is well explained by her mental

19  illnesses and as such the ALJ erred when he rejected Dr. Anderson's opinions of limitation

20  based on this purported inconsistency." *Id*. at 11 (citing *Groninger v. Astrue*, 2013 WL

21  787316, *8 (M.D. Fla. February 11, 2013) (holding that the ALJ erred when she failed to put

22  doctor's statements about lack of motivation in the proper context when Plaintiff had mental

23  impairments including a personality disorder which could reduce motivation). In addition,

24  plaintiff asserts that the ALJ erred by finding Dr. Anderson's opinion to be inconsistent with

REPORT AND RECOMMENDATION - 22

1    plaintiff's ability to care for her young son, in light of the abundant evidence that plaintiff's

2    mother is also extremely involved in raising plaintiff's son.  Dkt. 13 at 12.

3            The Commissioner responds that Dr. Anderson provided a medical opinion about the

4    nature and severity of plaintiff's impairments and restrictions, and a separate opinion on the

5    issue of whether plaintiff could work – which is reserved to the Commissioner.  Dkt. 14 at 10.

6    The Commissioner asserts that plaintiff has not identified any objective findings that tend to

7    support the extreme degree of limitation assessed by Dr. Anderson.  *Id*. at 14 (citing AR at 29).

8    The Commissioner argues that the ALJ could reasonably rely upon the opinion of the non-

9    examining medical consultants, Dr. Haney and Dr. Peterson, along with evidence of plaintiff's

10   activities and abilities, to reject Dr. Anderson's opinions.  *Id.*

11           As a threshold matter, the Court notes that the Commissioner proffers several improper

12   post hoc rationalizations for the ALJ's decision.  *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-

13   26 (9th Cir. 2009) (providing that the court reviews the ALJ's decision "based on the reasoning

14   and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit

15   what the adjudicator may have been thinking.") (citing, inter alia, *SEC v. Chenery Corp*., 332

16   U.S. 194, 196 (1947)).  The ALJ did not, for example, specifically discuss the opinions of non-

17   examining state agency consultants Drs. Haney and Peterson as a basis for rejecting Dr.

18   Anderson's opinions, and yet the Commissioner spends several pages discussing these

19   opinions.  *See* Dkt. 14 at 12-14.

20           In any event, the Court is not persuaded by the Commissioner's arguments.  The ALJ

21   failed to provide specific and legitimate reasons for affording Dr. Anderson's opinion

22   regarding plaintiff's functional limitations only "some weight."  As noted above, the ALJ

23   rejected Dr. Anderson's opinion that plaintiff "would likely have extreme difficulty sustaining

24   concentration and task persistence in a work setting related to high levels of anxiety/panic in a

REPORT AND RECOMMENDATION - 23

public situation" as well as "significant difficulty interacting with coworkers, supervisors and

the public" and "little resiliency in dealing with the stresses and demands of employment" on

the grounds that these findings were inconsistent with (1) plaintiff's largely unremarkable

mental status examination, (2) apparent lack of motivation to seek treatment, and (3) plaintiff's

daily activities.

First, the ALJ could not reasonably find Dr. Anderson's opinion that plaintiff has

"extreme difficulty sustaining concentration and task persistence in a work setting related to

high levels of anxiety/panic in a public situation" to be inconsistent with plaintiff's mental

status examination. Plaintiff "appeared tense" during her evaluation and asked if Dr.

Anderson's office had windows because "she could not tolerate being in a room without

windows." AR at 365. During the testing, she spoke rapidly and made a few mistakes. For

example, she completed five serial-7 subtractions with one mistake, could not spell "world"

backwards, and was unable to repeat a four-digit number backward on a second try. AR at

365. More significantly, Dr. Anderson's evaluation lasted only fifty minutes, and therefore the

Court cannot agree with the ALJ's finding that because plaintiff "was able to relate well with

Dr. Anderson and persist during the evaluation, this suggests that the claimant would be

capable of sustaining work" on a full-time basis. AR at 29, 366. Plaintiff's "persistence"

during an hour-long evaluation was an insufficient basis for the ALJ to reject Dr. Anderson's

opinion regarding plaintiff's functional limitations.

Second, Dr. Anderson's opinion that plaintiff is having difficulty complying with

treatment recommendations is not necessarily inconsistent with her opinion that plaintiff has

severe functional limitations and cannot handle the stress of employment or sustain a normal

workday. AR at 29. As discussed above, Dr. Anderson observed that "it seems fairly clear

from the records and from what she says that she considers benzodiazepines the treatment of

choice for her panic attacks," and "has dismissed treatment with other kinds of medications" or

cognitive-behavioral therapy.  AR at 366.  Dr. Anderson concluded her evaluation by noting

that "there are other medications she has not tried which potentially could be helpful to her.

Also, a rigorous course of cognitive-behavioral therapy potentially could be beneficial as well.

However, again, she does not seem to be particularly motivated to pursue these treatment

options" or to "get beyond the attacks and to become more independent and increase her

sphere of activities."  AR at 366.  As discussed above with respect to plaintiff's credibility,

however, the ALJ failed to discuss whether plaintiff's "lack of motivation" to seek new

treatments is properly considered a symptom of her anxiety or personality disorder.  Dkt. 13 at

11.[9]  Without some analysis of this possibility, this was not a specific and legitimate reason for

the ALJ to reject Dr. Anderson's opinion.

Finally, for the same reasons discussed above with respect to plaintiff's credibility, the

ALJ could not reasonably reject Dr. Anderson's assessment as inconsistent with plaintiff's

daily activities.  *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir.

1999) (holding that an ALJ may discount a physician's opinion to the extent it conflicts with

evidence of the claimant's daily activities).  Plaintiff is the primary caregiver and single mother

to her young son, but she lives with her mother, who testified that she is extremely involved in

raising plaintiff's son as well.  AR at 71.  Accordingly, plaintiff's daily activities, including

caring for her young son, were not a specific and legitimate reason for the ALJ to reject Dr.

Anderson's opinion regarding plaintiff's ability to sustain full-time work.  AR at 29.

---

[9] Plaintiff cites to the DSM-IV's description of a personality disorder as "an enduring
pattern of inner experience and behavior that deviates markedly from the expectations of the
individual's culture and is manifested in at least two of the following areas: cognition,
affectivity, interpersonal functioning or impulse control."  Without more, however, this
definition does not establish that lack of motivation is necessarily a symptom of plaintiff's
personality disorder. This issue must be further developed by the ALJ on remand.

REPORT AND RECOMMENDATION - 25

On remand, the ALJ should re-evaluate the medical evidence, including Dr. Anderson's opinion.  In particular, the ALJ should clarify whether plaintiff's "lack of motivation" to seek treatment that could help improve her anxiety and panic attacks should properly be considered a symptom of her diagnosed mental impairments.  If the ALJ needs to expand the record to resolve this issue, he should do so.

### C.   The ALJ Should Reconsider the Lay Opinion of Karen Klokstad

The ALJ appears to have rejected the opinion of plaintiff's mother, Ms. Klokstad, for many of the same reasons the ALJ found plaintiff's testimony less than fully credible.  The ALJ acknowledged that Ms. Klokstad's testimony regarding plaintiff's daily activities was "similar to the claimant's report," AR at 27, and rejected Ms. Klokstad's testimony that described plaintiff's panic attacks and inability to drive places without her mother as being inconsistent with other record evidence.

As discussed above, this case is being remanded for a reevaluation of the medical evidence as well as plaintiff's credibility.  In light of the ALJ's stated reasons for discounting the Ms. Klokstad's testimony in this case, it appears likely that the ALJ's assessment of her opinion may have been affected by his prior legal errors.  Thus, the ALJ must also reevaluate the lay witness statements of Ms. Klokstad on remand.   If the ALJ chooses to discount her testimony, he must provide germane reasons.

Finally, the ALJ's RFC assessment and conclusions at step five of the sequential evaluation process are inescapably linked to his prior conclusions regarding the medical evidence and plaintiff's credibility.  Accordingly, the ALJ's findings at the subsequent steps are also reversed and remanded.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 18, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 21, 2014**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

DATED this 4th day of November, 2014.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 27